# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **CHARLES HORTON,** | : | **MOTION TO VACATE** |
| **Movant,** | : | **28 U.S.C. § 2255** |
| | : | |
| **v.** | : | **CRIMINAL INDICTMENT NO.** |
| | : | **1:11-CR-0427-TWT-AJB-1** |
| **UNITED STATES OF** | : | |
| **AMERICA,** | : | **CIVIL FILE NO.** |
| **Respondent.** | : | **1:15-CV-0180-TWT-AJB** |

## UNITED STATES MAGISTRATE JUDGE'S ORDER
## AND FINAL REPORT AND RECOMMENDATION

Movant, Charles Horton, proceeding *pro se*, seeks via 28 U.S.C. § 2255 to challenge the constitutionality of his convictions and sentences entered in this Court under the above criminal docket number. The matter is before the Court (1) on Movant's § 2255 motion to vacate, [Doc. 230], Respondent's response,[Doc. 236], and Movant's reply, [Doc. 237]; (2) on Movant's motion to amend, [Doc. 240], Respondent's motion to dismiss the motion to amend, [Doc. 241], Movant's response to the motion to dismiss, [Doc. 242], Respondent's reply to Movant's response on the motion to dismiss, [Doc. 243], and Movant's reply to Respondent's reply, [Doc. 244]; and on consideration of evidence and testimony from the evidentiary hearing, [Docs. 261, 263], Movant's post-hearing brief, [Doc. 269], and Respondent's response in opposition to Movant's post-hearing brief, [Doc. 277].

AO 72A
(Rev.8/8
2)

I.      **Background**

The grand jury for the Northern District of Georgia charged Movant and his co-conspirators, Sherri Collins Davis, Jennifer Renee Dupree, and Jo'Van Elizabeth Owens with various gun crimes, committed for the most part in 2010.  (Indictment, ECF No. 1.)  Movant was charged on the following eleven counts:  causing false statements to be made with respect to information required for the records of a firearms dealer, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2 (Counts One and Two); conspiring to make those false statements, in violation of 18 U.S.C. §§ 371 and 924(a)(1)(A) (Count Three); possessing firearms as a convicted felon, in violation of 18 U.S.C. §§ 922(g), 924(a)(2), and 2 (Counts Four through Nine); and for unlawfully transporting firearms, in violation of 18 U.S.C. §§ 922(a)(3) and 924(a)(1)(D) (Counts Ten and Eleven).  (Indictment.)  Movant pleaded not guilty and proceeded to trial along with Dupree, with Movant represented by Dennis Craig O'Brien.  (Minute Entries, ECF Nos. 28, 144.)

The jury found Movant guilty on Counts One through Eight and Eleven, and the District Court imposed a total 205-month term of imprisonment.  (Verdict, ECF No. 159; J., ECF No. 176.)  Movant directly appealed and presented five grounds for relief, as summarized by the Eleventh Circuit Court of Appeals.

2

> First, [Movant] argues that the evidence at trial was insufficient to support his convictions for firearm possession. Second, he contends that the district court erred in admitting extrinsic evidence of similar uncharged conduct. Third, he maintains that the court also erred in not granting a mistrial based on the admission of a codefendant's incriminating statement. Fourth, he challenges the court's application of a four-level sentencing enhancement, under U.S.S.G. § 3B1.1, for organizing or leading a criminal activity involving five or more participants. Finally, he argues that his 205-month total sentence was both procedurally and substantively unreasonable.

*United States v. Horton*, 522 Fed. Appx. 456, 458 (11th Cir. June 11, 2013). On June 11, 2013, the Eleventh Circuit Court of Appeals affirmed the judgment against Movant. *Id.* at 463.[1]

Movant now seeks collateral relief under § 2255. (Mot. to Vacate, ECF No. 230 (motion dated December 31, 2014).) Movant raises the following grounds for relief.

1. The prosecutor committed misconduct in using testimony by Davis and Owens that he knew or should have known was false.

2. The Court erred in failing to give a requested jury charge and in denying Movant's motion for acquittal.

3. The Court erred by inadequately investigating jury misconduct.

4. The Court erred in denying Movant's motion for a mistrial and a severance.

---

[1]    In September 2014, Movant filed a motion for a new trial, which the Court denied in October 2014. (Mot. for New Trial, ECF No. 219; Order of Oct. 17, 2014, ECF No. 223.) On July 2, 2015, the Eleventh Circuit Court of Appeals affirmed the denial of the motion for a new trial. (USCA Op., ECF No. 238.)

3

5.   There was insufficient evidence to establish interstate commerce on Movant's convictions for unlawful possession of a firearm.

6.  Counsel provided ineffective assistance.
> a.   Counsel failed to present a consistent defense and essentially conceded Movant's guilt during closing argument.
> b.  Counsel failed to introduce a plea option to Movant.
> c.   There was insufficient evidence to support Movant's convictions for his aiding and abetting the making of false statement to a firearm dealer (construed to include a claim of ineffective assistance of counsel).
> d.  Movant was sentenced based on an inaccurate pre-sentence report (construed to include a claim of ineffective assistance of counsel).

7.  The Court erred in applying a manager/supervisor upward adjustment to Movant's sentencing offense level.

(Mot. to Vacate at iii, 4-24, A.1, A.2.)  In a motion to amend, dated September 21, 2015, Movant seeks to add a claim in regard to the categorization of his 2000 New York sexual-abuse conviction as a crime of violence.  (Mot. to Amend, ECF No. 240.)

## II.   28 U.S.C. § 2255 Standard

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255. Collateral relief, however, is limited.  "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally

4

convicted," *United States v. Frady*, 456 U.S. 152, 164 (1982), and it is the movant's burden to establish his right to collateral relief, *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015), *cert. denied*, _ U.S. _, 136 S. Ct. 267 (2015).

"Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012) (quoting *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000)).  Further, collateral review of a claim that could have been raised on direct appeal, but was not, is foreclosed unless the movant can show cause and prejudice for his default or actual innocence.  *See Fordham v. United States*, 706 F.3d 1345, 1349 (11th Cir. 2013).[2]  Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)); *see also Massaro v. United States*, 538 U.S. 500, 505-09 (2003) (holding that a constitutional

---

[2]      "To show actual innocence of the crime of conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence." *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (alteration in original) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

AO 72A
(Rev.8/8
2)

claim of ineffective assistance of counsel is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts).

## III.   Discussion

### A.   Ground I – Prosecutorial Misconduct in Using False Testimony

At trial, Davis testified that the government had given her immunity to testify and had agreed not to use her trial statements in the action pending against her. (Trial Tr. Vol. I at 56-57, ECF No. 197.) Owens testified similarly. (Trial Tr. Vol. II at 196, ECF No. 198). Additionally, when asked whether, in 2010, she had prostituted herself, Owens answered "no" and then, on further cross-examination, admitted that she had engaged in prostitution in the past. (*Id.* at 233, 235.)

On direct appeal, on his sufficiency of the evidence claim, Movant asserted that the primary evidence against him was from witnesses who had been granted immunity for their testimony and had admitted prior criminal conduct. Appellant Br. at 4-6, 15, *Horton*, 522 Fed. Appx. 456. The Eleventh Circuit stated that "[c]redibility questions are for the jury, and we assume that the jury answered them all in a manner that supports its verdict" and determined that the trial evidence, including the testimony of his codefendants whom had been granted immunity, was sufficient to support Movant's convictions. *Horton*, 522 Fed. Appx. at 458-59. The court specifically noted that

6

"[Movant] was able to attack the witnesses' credibility at trial, and the jury was entitled to judge the credibility of the witnesses."  *Id.* at 459 n.1.

Movant now argues that the prosecutor committed misconduct by allowing Davis and Owens to testify in regard to gun quantity when the prosecutor knew or should have known the testimony was false.  (Mot. to Vacate at 5-8.)  To show that their testimony was false, Movant asserts that Davis and Owens were given immunity for their cooperation and that, additionally, Owens gave inconsistent testimony on whether she had worked as a prostitute.[3]  (*Id.* at 5-6.)  Movant contends that appellate counsel raised the issue on appeal in a different, and wrong, context.  (*Id.* at 5.)

Respondent argues that the Eleventh Circuit has already decided that witness credibility is a question for the jury and that, otherwise, Movant has procedurally defaulted his claim.  (Resp't Resp. at 4-6, ECF No. 236.)

Movant did not raise a claim of prosecutorial misconduct on direct appeal, and his claim therefore is procedurally defaulted.  As stated above, claims that could have been raised on direct appeal, but were not, generally are foreclosed in § 2255 proceedings unless the movant can show cause and prejudice for his default or a

---

[3]     Movant also refers to a recorded phone call that was played when Owens gave testimony, but does not present a cogent argument based thereon.  (Mot. to Vacate at 5.)

7

miscarriage of justice based on actual innocence.  *See Fordham*, 706 F.3d at 1349. Constitutionally ineffective assistance of appellate counsel, which Movant asserts, "can constitute cause[.]"  *Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting *Holladay v. Haley*, 209 F.3d 1243, 1254 (11th Cir. 2000)) (internal quotation marks omitted), *cert. denied*, _ U.S. _, 135 S. Ct. 743 (2014).  To establish cause based on ineffective assistance of counsel, a movant must demonstrate deficient performance by counsel and demonstrate that, if counsel had not performed deficiently, there is a reasonable probability that the outcome would have been favorable to the movant.  *See Strickland v. Washington*, 466 U.S. 668, 690-92 (1984).

Movant's attempt to show cause based on ineffective assistance of counsel fails because he does not show a viable prosecutorial misconduct claim that counsel should have pursued on appeal.  A prosecutor violates due process when he or she knowingly, and without correction, allows a governmental witness to testify falsely.  *Napue v. People of State of Ill.*, 360 U.S. 264, 265, 269 (1959); *see also Giglio v. United States*, 405 U.S. 150, 152-55 (1972) (holding that due process was violated when witness testified that he *had not* received a promise of prosecutorial leniency and the prosecution failed to disclose that he *had* received such a promise).  "To establish prosecutorial misconduct for the use of false testimony, a defendant must show the

8

prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010). However, "a prior statement that is merely inconsistent with a government witness's testimony is insufficient to establish prosecutorial misconduct" or to " 'impute knowledge of falsity to the prosecutor.' " *Id.* (quoting *United States v. Michael*, 17 F.3d 1383, 1385 (11th Cir. 1994)). Testimony that conflicts with or is inconsistent with other evidence is not considered false testimony in the *Giglio* sense, and when "the jury was made aware of the inconsistency, the 'false' testimony could not affect the judgment of the jury." *Tejada v. Dugger*, 941 F.2d 1551, 1557 (11th Cir. 1991).

Here, Owens's allegedly inconsistent testimony regarding prostitution and Davis's and Owens's immunity agreements, of which the jury was made aware, do not show prosecutorial misconduct. Absent a viable prosecutorial misconduct claim, Movant cannot show cause for his default based on appellate counsel's failure to pursue a prosecutorial misconduct claim. Further, Movant makes no showing of actual innocence to overcome his default. Collateral review of Ground One is foreclosed.

9

**B.**     **Ground II – Court Error in Failing to Give a Requested Jury Charge and in Denying Movant's Motion for Acquittal**

Movant requested a jury charge on mere presence in relation to aiding and abetting and conspiracy.   (Requests to Charge ¶¶ 6, 7, ECF No. 123; Trial Tr. Vol. III at 482, ECF No. 199.)[4]  The Court gave instructions that essentially were the same as those requested by Movant.  (*See* Trial Tr. Vol. III at 548-49, 551.)[5]

------

[4]     Defendant requested the following charges –

Before any Defendant can be held criminally responsible for the conduct of others it is necessary that the Defendant willfully associate in some way with the crime, and willfully participate in it.  Mere presence at the scene of a crime and even knowledge that a crime is being committed are not sufficient to establish that a Defendant either directed or aided and abetted the crime. You must find beyond a reasonable doubt that the Defendant was a willful participant and not merely a knowing spectator.

(Requests to Charge ¶ 6 (mere presence, aiding and abetting).)

Mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not, standing alone, establish proof of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.

(*Id*. ¶ 7 (mere presence, conspiracy).)

[5]     The Court gave the following charges –

But finding that a Defendant is criminally responsible for the acts of

10

After the government rested and dismissed Count Nine, Movant moved for an acquittal on all remaining counts, and the Court denied that motion. (Trial Tr. Vol. II at 376.) On direct appeal, Movant argued that the evidence was insufficient to show his guilt on "the general grounds" and that his mere presence during the purchase of the guns was insufficient to support his convictions for possessing firearms. Appellant Br. at 15, *Horton*, 522 Fed. Appx. 456. The Eleventh Circuit found --

> The evidence at trial was sufficient to support [Movant's] convictions for firearm possession by a convicted felon. As an initial matter, the parties stipulated before trial that [Movant] was a convicted felon. Next, the evidence at trial enabled a reasonable trier of fact to conclude that [Movant] had possessed the firearms at issue. [Movant's]

---

> another person requires proof that the Defendant intentionally associated with or participated in the crime, not just proof that the Defendant was simply present at the scene of a crime or knew about it. In other words, you must find beyond a reasonable doubt that a Defendant was a willful participant and not merely a knowing spectator.

(Trial Tr. Vol. III at 551 (mere presence, aiding and abetting).)

> But simply being present at the scene of an event or merely associating with certain people and discussing common goals and interests doesn't establish proof of a conspiracy. A person who doesn't know about a conspiracy but happens to act in a way that advances some purpose of one doesn't automatically become a conspirator.

(*Id.* at 548-49 (mere presence, conspiracy).)

11

> codefendants testified that they purchased the firearms at [Movant's]
> direction and that they turned the guns over to him afterwards.[]  The
> testimony of the store employees, along with surveillance video,
> confirmed that [Movant] was present at the time the firearm purchases
> were made.  The evidence also showed that the gun purchases coincided
> temporally with [Movant's] trips to and from Buffalo, and the firearms at
> issue were ultimately recovered in Buffalo.  The totality of the evidence
> thus permitted the jury to reasonably conclude that [Movant] possessed
> the firearms at issue.

*Horton*, 522 Fed. Appx. at 459.

Movant argues that the Court erred in failing to give his requested jury instructions on mere presence in regard to the conspiracy charge. (Mot. to Vacate at 8-9.)  Movant also argues that the Court's denial of his motion for acquittal on the conspiracy charge was error because the evidence shows only that he was present at the gun store and there was no testimony that he was seen leaving Georgia with any firearms or evidence to suggest that he transported firearms to New York.  (*Id.* at 8-10.)  Respondent argues that the Eleventh Circuit has decided this ground and that it is not subject to collateral review.  (Resp't Resp. at 4-6.)

Movant's argument on the jury charge is without merit in light of the Court's instructions, which included language that essentially was the same as requested by Movant.  Further, to the extent that Movant raised his claim on mere presence on direct appeal, the Court agrees with Respondent.  The matter may not be re-litigated.  *See*

*Rozier*, 701 F.3d at 684.  To the extent that Movant did not raise on appeal a distinct claim in regard to mere presence on the conspiracy charge, it is procedurally defaulted. Movant fails to overcome the default by showing ineffective assistance[6] of counsel or actual innocence.

    **C.**    <u>**Ground III – Court Error in Inadequately Investigating Jury Misconduct**</u>

After trial, it became known that a juror had researched the law.  (*See* Trial Tr. Vol. III at 484-85.)  The Court questioned the juror, who confirmed that she had researched the meaning of "shadow of a doubt" and had told another juror that she had "researched a little bit about the shadow of doubt." (*Id*. at 486-87.)  The juror did not state, however, that she had told the other juror the result of her research.  (*Id*.)  The Court discharged the juror who performed the research. (*Id*. at 488.) Three other jurors informed the Court that the juror at issue had stated that she did research on the case, that they had stopped her from disclosing the result of her search, and that they did not know what she had found in her research.  (*Id*. at 489-92.)

---

[6]    In light of the jury charges on mere presence given by the Court, the undersigned perceives no viable mere-presence jury-charge claim that appellate counsel could have raised on appeal.

13

Movant argues that the Court erred when, after dismissing the juror for researching the meaning of "shadow of a doubt," it did not dismiss three other jurors who denied receiving any information from the dismissed juror although the dismissed juror had stated that she had shared information with one other juror. (Mot. to Vacate at 12-13.) Respondent argues that Movant procedurally defaulted this issue and that it fails on its merits. (Resp't Resp. at 12-15.)

Movant did not raise this issue on direct appeal, and it is procedurally defaulted. The dismissed juror stated only that she had told another juror that she had performed research. She did not state that she disclosed any of the results. The three jurors confirmed that they were unaware of any of the results. Accordingly, there is no evidence that the three jurors were exposed to any extrinsic evidence. The District Court was satisfied that the three jurors at issue did not know the content of the research that was done by the dismissed juror. There is no viable juror misconduct claim that counsel should have pursued. *See United States v. Ronda*, 455 F.3d 1273, 1299 (11th Cir. 2006) ("The defendant has the burden to show that the jury has been exposed to extrinsic evidence or extrinsic contacts."). Movant fails to overcome his default by showing that counsel was ineffective for failing to pursue this issue, and Movant otherwise fails to overcome his default. Review is foreclosed.

14

**D.**   **Ground IV – Court Error in Denying Movant's Motion for a Mistrial and a Severance**

Prior to trial, the Court decided that Movant and Dupree would be tried together but stated that severance would be reconsidered if there were a *Bruton* problem.  (*See* Pre-Trial Hr'g Tr. at 34, ECF No. 201); *see Bruton v. United States*, 391 U.S. 123, 125 (1968) (holding that admission at joint trial of a codefendant's confession that incriminated defendant violated the Confrontation Clause).  The Court subsequently denied a mistrial after the prosecutor solicited a hearsay statement by Dupree that incriminated Movant.  (Trial Tr. Vol. I at 164-65.)  Dupree later testified and was subject to cross-examination.  (Trial Tr. Vol. III at 397-467.)

On direct appeal, Movant argued that the Court erred in not granting a mistrial after the prosecutor solicited testimony on Dupree's hearsay statement that incriminated Movant, in violation of *Bruton*.  Appellant Br. at 18-20, *Horton*, 522 Fed. Appx. 456.  The Eleventh Circuit found as follows --

> The district court did not abuse its discretion when it refused to grant [Movant's] motion for a mistrial.  *Bruton* is only violated where a statement is offered of a non-testifying codefendant.  *See Bruton*, 391 U.S. at 135-36 . . . . The record shows that [Movant's] codefendant testified at trial and that [Movant] had the opportunity to cross-examine her.  Accordingly, there was no *Bruton* error.

*Horton*, 522 Fed. Appx. at 461.

AO 72A
(Rev.8/8
2)

Movant now argues that the Court erred in denying a severance and in denying his motion for a mistrial based on the same issue. (Mot. to Vacate at 16). Respondent argues that the Eleventh Circuit has decided this ground and that it is not subject to collateral review, whether presented as a claim based on the denial of the motion for a mistrial or "rehash[ed]" as a severance claim. (Resp't Resp. at 16.) The Court agrees with Respondent. The matter may not be re-litigated. *See Rozier*, 701 F.3d at 684; *see also United States v. Arias-Izquierdo*, 449 F.3d 1168, 1185 (11th Cir. 2006) ("Norneilla-Morales testified at trial and was available for cross-examination, thus Hernandez's Sixth Amendment rights were not violated and his motion for severance was properly denied.").

### E.   Ground V – The Evidence was Insufficient to Establish Interstate Commerce for the Charges of Unlawful Possession of a Firearm

On direct appeal, Movant asserted that there was insufficient evidence to establish that the guns were involved in interstate commerce. Appellant Br. at 15-16, *Horton*, 522 Fed. Appx. 456. The Eleventh Circuit Court of Appeals disagreed, finding that, "as the guns were manufactured in Ohio and then sold in Georgia, they had the requisite 'minimal nexus' to interstate commerce." *Horton*, 522 Fed. Appx. at 460.

16

In his § 2255 motion, Movant attempts to re-argue his claim that the evidence was insufficient to establish the interstate commerce nexus.  (Mot. to Vacate at 17.) Respondent argues that the Eleventh Circuit has decided this ground and that it is not subject to collateral review.  (Resp't Resp. at 4-6.)  Respondent is correct.  The matter may not be re-litigated.  *See Rozier*, 701 F.3d at 684.

### F.    <u>Ground VI(a) – Counsel's Failure to Present a Consistent Defense</u>

At trial, counsel's theory of the case was (1) that Movant did no more than give his co-indictees, his cousins, a ride, at their request, to a pawn shop or gun store and (2) that the guns which were found in Buffalo – where Movant lived – could have been taken there by one of the co-indictees.  (Trial Tr. Vol. I at 22-23.)  During closing, counsel argued that of the five guns recovered in Buffalo, there was no evidence that the persons, who were in possession of the five guns recovered in Buffalo, had obtained the guns from Movant.  (Trial Tr. Vol. III at 527-28.)  Counsel further argued as follows --

> This young lady, Ms. Dupree, had two guns.  Two of these guns that are guns that she bought showed up in Buffalo.  Okay?  She said that those guns were stolen on the 24th of June, thereabouts – stolen on the 24th of June.  **I'm thinking, Maybe the jury's going to think [Movant] stole those guns.**  Okay?  I started looking through their evidence. Okay? . . . .

17

On the 22nd of June, two days before they were stolen, [Movant] was back in New York.  He had delivered a car, the rental car back to New York.  [Movant] was not even in the city here when those guns were stolen, okay, which suggests to me if [Movant] had nothing to do with these two guns that showed up in New York it's a high likelihood he had nothing to do with the other three that showed up in New York.

(*Id*. at 528-29 (emphasis added).)

Movant refers to counsel's comment in bold above and argues that counsel was ineffective for arguing inconsistently with the defense theory of the case and essentially conceding Movant's guilt during closing argument.  (Mot. to Vacate at 19-21.) Respondent asserts that the statement at issue was a rhetorical question by counsel and was not a concession of guilt.  (Resp't Resp. at 19-20.)

Under the *Strickland* standard, stated earlier, Movant fails to show that counsel was ineffective.  When read in context and in full, it is apparent that counsel did not concede guilt and in fact argued that it would have been impossible for Movant to steal the guns that Dupree reported as stolen.  As a result, Movant is not entitled to relief on this ground.

## G.     Ground VI(b) – Counsel's Failure to Introduce Plea Option to Movant

In October 2011, at Movant's detention hearing at which Movant was present, the government explained that Movant was facing an estimated offense level of 34,

18

with a guideline range of 262 to 317 months.  (Detention Hr'g Tr. at 13, ECF No. 212.)  In March 2012, the government offered a plea agreement to plead guilty to Count Three, subject to a maximum five-year term of imprisonment.  (*See* Resp't Exs. 2, 3, ECF Nos. 261-2 and -3.)  On March 8, 2012, a change of plea hearing was set in Movant's case.  (*See* Minute Entry, ECF No. 88.)  On the day that the hearing was set, however, the government advised the Court that its plea offer had not been accepted, and the case was set for trial.  (*Id*.)  Movant was present at the March hearing, and the government again stated that he was facing a sentence of up to 240 months.  (Mar. 8, 2012 Tr., ECF No. 249.)  Movant sought the appointment of new counsel.  (Mot. to Withdraw, ECF No. 87.)  The Court denied that request, and in seeking reconsideration on March 15, 2012, Movant, *pro se*, complained that counsel was attempting to coerce him into accepting a five-year plea bargain, telling him that "he would make sure he would loss [sic] in trial."  (*Pro Se* Mot. for Recons. at "(4)," ECF No. 94.)

In April 2012, counsel moved to employ Thomas E. Thurmond, a criminal justice consultant, to perform a "comprehensive plea and sentencing guideline analysis" so that Movant could "completely understand and weigh his trial and plea options[.]"  (Mot. to Appoint Expert, ECF No. 107.)  The Court granted that motion.

19

(Order of Apr. 16, 2012, ECF No. 109.)  On April 17, 2012, Thurmond reported to counsel via letter and compared the anticipated guidelines ranges should Movant go to trial versus accept the proposed negotiated plea.  (Mov't Ex. C, ECF No. 230-1.) Thurmond advised that Movant likely would receive a sixty-month (five-year) sentence if he pleaded guilty to the Count Three conspiracy, that his cumulative statutory maximum would be eighty years, and that under the guidelines if he went to trial and lost he would probably face a guidelines range of 210-262 months.  (*Id.*)

> On May 1, 2012, government counsel e-mailed defense counsel and stated –
>
> I extended a plea offer in a letter dated March 6th which limited [Movant's] exposure to 60 months' imprisonment (a plea to the conspiracy) instead of 120 months' imprisonment (the felon in possession charges) but your client has declined to accept it.
>
> Because of the planning for witness travel . . . , please be advised that as of the close of business on Thursday, May 3, 2012 the plea offer will be revoked and that if [Movant] changes his mind about pleading guilty he will have to plead guilty to two felon in possession of firearm counts and two illegal transportation of a firearm counts.

(*Id.*)  The copy of that e-mail, provided by Movant, also bears a May 1, 2012 handwritten note from counsel, which addresses Movant and states, "I just received the above e-mail.  Please let me know immediately if you want to take the plea.  I strongly urge you to do so."  (*Id.*)  In a May 4, 2012 letter to the Court, Movant, *pro*

20

*se*, again sought reconsideration of his request for new counsel and referred to facts from November 3, 2011 through April 16, 2012 to inform the Court of his "ongoing concerns," which included that he would be mortally injured if he was required to proceed to trial with his present counsel and that counsel was "trying to force [Movant] to take a 5 year[] plea deal," had stated that if they went to trial he would not try his best to win and would "make sure he would loss [sic]," and "constantly place [sic] his talk and concern in [Movant] taking a 60 month plea." (*Pro Se* Mot. for Recons. at 2-3, ECF No. 147; Order of May 22, 2012, ECF No. 162 (denying reconsideration).)

Movant proceeded to trial. At sentencing, the Court found that no mandatory minimum sentence applied and that Movant was subject to a five-year statutory maximum on each of Counts One through Three and Eleven and was subject to a ten-year statutory maximum on each of Counts Four through Eight. (Sentencing Tr. at 23-24, ECF No. 202.) The Court found a base offense level of twenty, a total offense level of thirty-two, and a guidelines range of 188 to 235 months. (*Id*. at 22-24.) The Court imposed a total 205-month term of imprisonment. (*Id*. at 32.)

21

1.      **Pre-Hearing Argument**

In his § 2255 motion, Movant argues that counsel was ineffective for (1) failing to introduce a plea option to Movant, (2) doing everything that he could to discourage Movant from accepting a plea, (3) forcing Movant to proceed to trial and "never advis[ing] a plea option as being more advantageous," and (4) advising Movant that he faced a maximum 120-month sentence if he went to trial.  (Mot. to Vacate at 21-22.)  Movant asserts, "counsel did not communicate the government[']s plea offer to him." (*Id*. at 22.)  Movant asserts that he learned of Thurmond's April 17, 2012 letter and the government's e-mail only after trial (after he requested his trial transcripts) and asks that he now be allowed to accept the five-year plea deal referred to in the letter.  (*Id*.)[7]  Movant asserts that if counsel had properly informed him of his sentencing range, he would have pleaded guilty.  (*Id*.)

---

[7]      Movant also states that counsel failed to advise him regarding the government's motions seeking immunity for Davis and Owens.  (Mot. to Vacate at 22.)  The government filed those motions on May 7, 2012, after the government stated that the plea offer would be revoked.  (Mots. to Compel, ECF Nos. 121, 122.)  Accordingly, counsel's alleged failure to inform Movant of these motions is not relevant to Movant's failure to accept the plea offer.

22

Respondent argues that this claim fails because the record shows that Movant was aware of, and repeatedly rejected, the government's plea offer.  (Resp't Resp. at 20-22.)

In reply, Movant no longer asserts that he was *unaware* of the plea offer. Instead, Movant argues that counsel was ineffective because he repeatedly told Movant that if he lost at trial he would receive no more than a ten-year (120-month) sentence and never accurately informed him of his sentencing exposure to more than 200 months.  (Mov't Reply at 3, 5-6, ECF No. 237.)  Movant asserts that if counsel had properly advised him that he faced a possible sentence of over 200 months, he would have accepted the five-year plea offer.  (*Id*. at 10.)

2.      **Hearing Testimony and Evidence**

At the hearing, counsel for Movant clarified that Movant's prior claims that counsel failed to inform him about the plea offer and/or failed to inform him that the plea offer would expire were meant to claim that counsel failed to *timely* inform him of the expiration date of the plea offer.[8]  (Section 2255 Hr'g Tr. at 8, ECF No. 263.)

---

[8]      Additionally, Movant's pre-trial letters to the Court affirmatively contradict his initial assertions that counsel failed to inform him of the five-year plea offer and that counsel discouraged him from accepting a plea and forced him to proceed to trial.

23

Counsel O'Brien testified that he communicated the plea offer to Movant many times, that Movant would not agree to the five-year plea offer, that he sought appointment of an expert because Movant disagreed with his assessment of his guidelines exposure, that he hired Mr. Thurmond, and that Mr. Thurmond's assessment more or less agreed with counsel's assessment. (*Id*. at 15, 19, 21-22.) Counsel testified that on April 17, 2012, he and Mr. Thurmond went to Movant's place of confinement, that they had a brief discussion with Movant on his sentencing exposure (brief because Movant told Mr. Thurmond that he did not know what he was talking about), and that he gave a copy of Mr. Thurmond's letter, with sentencing calculations, to Movant. (*Id*. at 21-22, 48-49.) Counsel testified that at 4:15 p.m. on May 1, 2012 he received the government's e-mail stating that the plea offer would expire at close of business on May 3, 2012, and that his note indicated that he mailed a copy to Movant on that same day. (*Id*. at 23-25.) Respondent entered exhibits showing that the mail log at Movant's place of confinement received mail from counsel on May 2 and that Movant signed for it on May 3, 2012. (*Id*. at 25; *see also* Resp't Ex. 11, ECF No. 261-11.)

Mr. Thurmond testified (1) that he went with counsel to visit Movant to discuss the substance of his letter on Movant's sentencing exposure, which he recalled to be on par with counsel's calculations and (2) that Movant listened, although it did not

24

appear to Mr. Thurmond that Movant wanted to hear what they had to say, and received a copy of the letter. (Section 2255 Hr'g Tr. at 76-78, 80, 86.)

Movant testified that he wanted to plead guilty, and told counsel so, since approximately December 2011. (*Id*. at 91-92, 102.) Movant also testified that counsel had made it clear on March 22, 2012 that he was facing no more than ten years if he went to trial, that counsel did not discuss how the guidelines might apply in his case, and that the only thing counsel discussed was a base offense level of twenty and criminal history points. (*Id*. at 90, 104, 106.) Movant testified that on April 17, 2012, he was "in the back" with the marshals, waiting to leave for an outside medical trip, but was instructed that he had to see counsel before he left. (*Id*. at 107-08.) Movant testified that he met with counsel and Mr. Thurmond for approximately three minutes, that he left because his ear was hurting badly and left Mr. Thurmond's letter on the table upside down without reading it, and that he did not see the letter again until after trial.[9] (*Id.* at 107-09.)

---

[9]      Although there was a controversy regarding the time of the April 17 meeting, neither party has pursued the issue. (*See* Mov't Ex. 2, ECF No. 261-19 (stating that Movant went to outside medical appointment, with recorded time of "4/17/12 1300"); Section 2255 Hr'g Tr. at 47 (counsel stating that his records show the meeting at one p.m. but that he had no independent recollection of the time). It appears that the recorded time of "1300" may have reflected the time that Movant went to the "back" to await transportation for his medical visit. As the parties have not addressed

AO 72A
(Rev.8/8
2)

Movant testified that he received counsel's mail ( forwarding the government's e-mail) at 4:00 p.m. on May 3, 2012 and that, after he got out of lockdown at approximately 4:45 p.m., he tried to contact counsel through a third party; he "probably called" his mother and/or fiancé to contact counsel; he did speak to his mother and fiancé, who "pointed [him] on taking a plea instead of going to trial . . . ."; but he was unable to contact counsel before 5:00. (*Id*. at 100-03.) Movant testified that his May 4, 2012 letter to the court was only an attempt to obtain new counsel because he had communication issues with counsel O'Brien. (*Id*. at 103.)

On cross-examination, Movant denied remembering any reference to his potential guidelines exposure at the detention hearing or the March 8, 2012 hearing. (*Id*. at 127.) When asked whether counsel had concluded that Movant's offense level would be higher than fourteen, Movant responded, "No, not to my knowledge." (*Id*. at 130.) After Movant was reminded that he earlier had testified that counsel had discussed a base offense level of twenty, Movant changed his answer and stated that he had been confused by the question. (*Id*. at 131.)

The Court informed the parties of its preliminary findings, as stated immediately below. (*Id*. at 137-38.)

─────────────────────

the matter, the Court does not address this matter further.

Basically the evidence establishes that [Movant] made a bad choice. He was advised of a plea offer[.] . . . [F]irst of all, I don't find his testimony credible with regard to his desire that he always wanted to plead. He rejected the March plea offer which, reading between the lines, is pretty much what he now contends he was looking for, which was a 60-month cap but with the ability to argue guideline enhancements or lack of enhancements, which would have put him below 60 months. And he rejected that choice despite being . . . being well advised and informed by Mr. O'Brien of what his choices and options were.

He was aware or made aware on multiple occasions that if he went to trial, he would be looking at somewhere between 15 to 20 years in prison. He was told this at the detention hearing. He was told this by Mr. O'Brien. He was told this at the March hearing before Judge Thrash.

And I also find that the evidence demonstrates that Mr. O'Brien discussed the guidelines with [Movant], and [Movant's] testimony about that is not credible. In fact, he testified differently within moments of one another. It's clear that he got that information from Mr. O'Brien because otherwise he would not have known of a base offense level of 20.

And the evidence also shows that he received notice of the May 1 plea offer, and on May the 4th he essentially rejected it by writing to Judge Thrash that his lawyer was trying to force him to take a five-year plea deal. . . . I find not credible that he contends that he was told only that he faced a maximum sentence of 120 months. He was told, like I said on a number of occasions, that he was looking at closer to 20 years, and I find the testimony of Mr. Thurmond and Mr. O'Brien credible that they explained to him on April the 17th that he was facing close to 240 months, give or take 10 or 20 months on either side if he went to trial and was found guilty. And the guidelines went contrary to his belief.

27

(*Id*.)  The Court then allowed an opportunity for additional briefing.  (*Id*. at 139-40.)

### 3.   **Post-Hearing Argument**

Movant argues that counsel was ineffective in failing to timely notify him of the expiration date of the plea offer and apprise him of his potential sentencing exposure under the guidelines.  (Mov't Post-Hr'g Br., ECF No. 269.)  Movant asserts that he did not receive notice until late in the day of May 3, 2012 that the plea offer would expire by close of business on May 3 and could not contact counsel in time to accept the offer; that counsel was deficient for failing to notify him in a timely manner that the plea offer would expire; and that, had counsel timely informed him, he would have accepted the plea offer and received a sentence of no more than sixty months instead of the 205 months that he is now serving.  (*Id*. at 11-12.)  Movant asserts that, although he previously rejected the plea, he had a right to know of the expiration date and that his May 4, 2012 letter to the Court was only an attempt to obtain new counsel, not an expression that he rejected the plea offer.  (*Id*. at 13.)  Movant further asserts that counsel failed to explain how the guidelines would apply in his case; that poor communication between Movant and counsel and Movant's physical pain prevented an explanation of the guidelines when counsel and Thurmond came to the detention

AO 72A
(Rev.8/8
2)

center on April 17, 2012; and that he would have accepted the plea offer if it had not been for the confusion caused by counsel's inadequate explanations.  (*Id*. at 14-18.)

Respondent argues that Movant's claims regarding counsel's allegedly deficient performance on the plea offer fail and that he cannot show prejudice because of his demonstrated intent, through May 4, 2012, to reject the offer.  (Resp't Post-Hr'g Resp. at 10-11, ECF No. 277.)  Respondent further argues that counsel made reasonable efforts to convey Movant's sentencing exposure and cannot show prejudice when he rejected the plea offer knowing that he faced a substantially higher sentence at trial.  (*Id*. at 12-13.)[10]

---

[10]     Following the hearing, Movant *pro se* submitted a copy of a letter to counsel in which he informed counsel of important arguments.  (Letter, ECF No. 264.)  Movant *pro se* also has submitted a post-hearing affidavit, which counsel has resubmitted.  (Letter and Aff., ECF No. 279; Notice of Filing Aff., ECF No. 278.)  The affidavit contains a list of arguments that Movant wanted counsel to file in reply to Respondent's post-hearing response.  (*Id*.)  Additionally, counsel has filed a notice of submitting Movant's *pro se* post-hearing reply and memorandum in reply to Respondent's post-hearing response.  The *pro se* reply and memorandum submitted by counsel are signed only by Movant and not by counsel, and it appears that counsel submitted Movant's *pro se* writings out of an abundance of caution, but declined signing them under Fed. R. Civ. P. 11.  In the circumstances and as Movant is represented on Ground VI(b), the Court does not consider Movant's non-counseled letter, reply/memorandum, or affidavit of arguments for reply.  *See* LR 83.1 D.(2), NDGa.

### 4.   <u>Law and Recommendation</u>

*Strickland* again applies.  To show prejudice based on counsel's performance in regard to a not-guilty plea, the movant "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial."  *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (alteration in original) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) (internal quotation marks omitted).  When the movant is aware of a plea offer, "his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer."  *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991); *Cook v. United States*, 189 Fed. Appx. 927, 931 (11th Cir. July 17, 2006) (holding that defendant's after the fact assertion that, but for counsel's erroneous advice regarding the charges against him, he would have pleaded guilty, was insufficient to meet the reasonable probability standard or show prejudice).

The evidence shows that counsel discussed the guidelines with Movant, and Movant's testimony otherwise is not credible.  Counsel's and Mr. Thurmond's testimony that they explained to Movant that he was facing over 200 months if he went to trial is credible, and Movant's testimony that counsel told him he faced a

30

maximum of 120 months is not credible.  Movant was aware or was made aware, on multiple occasions – at the detention hearing, by counsel, and at the March hearing, that he was looking at fifteen to twenty years in prison if he went to trial.  The evidence shows that Movant made a bad choice and rejected the sixty-month plea offer, which he now states that he wants, and that he did so after being well advised by counsel on his choices and options.

Movant's testimony that he always wanted to plead guilty – at least to any *existing* plea offer – is simply not credible.  Movant continually rejected the government's five-year plea offer, the only offer available.  Further, the evidence shows that Movant received notice of the plea offer expiration date before the offer expired.  Although Movant states that he attempted to call counsel because he wanted to accept the offer, his testimony is unconvincing.  Although under pressure, at the last minute, to accept the offer he allegedly wanted, Movant testified somewhat equivocally that he "probably" called his mother or fiancé so that they could contact counsel and then testified that he spoke to his mother and fiancé, who "pointed [him] on taking a plea instead of going to trial . . . ."  (*See* Section 2255 Tr. at 101-02).  Further, notwithstanding the alleged importance of the matter to Movant, there is no evidence that he attempted to accept the plea offer in any other manner, and there is

AO 72A
(Rev.8/8
2)

no evidence or explanation as to why he did not.  For example, Movant provides no reason why he did not attempt to respond to counsel or the government via mail submitted to prison officials for mailing before end of business on May 3. Notwithstanding, to the extent that counsel may have performed deficiently in failing to inform Movant earlier of the expiration date (a finding the Court expressly does not make), Movant fails to show prejudice as his continued opposition to the five-year plea offer is plainly stated in his May 4 letter to the Court.

As a result, Movant is not entitled to relief on this ground.

**H.   Ground VI(c) – The Evidence was Insufficient on Movant's Convictions for Aiding and Abetting the Making of False Statements to a Firearms Dealer**

As stated above, Movant was charged with causing false statements to be made with respect to information required for the records of a firearms dealer, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2 (Counts One and Two).  (Indictment.)  On direct appeal, Movant argued generally that the evidence of his mere presence during the purchase of the firearms was insufficient to support his convictions.  Appellate Br. at 12, 15; *Horton*, 522 Fed. Appx. 456.

Movant now argues that the evidence to support his convictions for aiding and abetting the making of false statements to a firearms dealer was insufficient under

18 U.S.C. § 922(a)(6) because the gun store owners knew that Owens (and others) had provided false information and, therefore, the false statements were not material to the lawfulness of the sales.  (Mot. to Vacate at 23-24.)  In presenting this claim as part of Ground VI (which asserts ineffective assistance of counsel generally), it appears that Movant argues that this specific claim was not raised on direct appeal because of ineffective assistance of appellate counsel.

Respondent argues that Movant was not charged under § 922(a)(6) but under § 924(a)(1)(A), which does not require that the false statement be material to the lawfulness of the sale.  (Resp't Resp. at 6-7.)

Movant did not raise this specific issue on direct appeal, and it is procedurally defaulted.  Counsel's failure to raise this issue on appeal was reasonable because, as stated by Respondent, Movant was charged and convicted under § 924(a)(1)(A), which does not require proof that a false statement to the dealer was material to the lawfulness of the sale.  *See United States v. Hawkins*, 794 F.2d 589, 590-91 (11th Cir. 1986) ("[Section] 924(a) requires that the government prove that the defendant made a false statement related to information required by law to be kept in the records of a federally-licensed firearms dealer. . . . [T]his information need not necessarily be material to the lawfulness of the sale.").  Review is foreclosed because

33

Movant fails to overcome his default by showing that counsel was ineffective on the matter and because Movant otherwise fails to overcome his default.

## I.      Ground VI(d) – Movant was Sentenced Based on an Inaccurate Pre-Sentence Report

Paragraph Sixty-Two of Movant's pre-sentence report shows that he was assigned three points for his 1994 petit larceny conviction, (1) for which he received a three-year probationary term, (2) on which he was re-sentenced in 1995 to one-year of imprisonment for a probationary violation, and (3) on which he was re-sentenced in 1997 to six months of imprisonment for a probationary violation.  (Presentence Investigation Report (PSR) ¶ 62, ECF No. 226.)  The probation officer determined that, under U.S.S.G. § 4A1.2(e)(1), the 1995 one-year sentence and the 1997 six-month sentence counted in calculating Movant's criminal history because they exceeded one year and one month and resulted in Movant being incarcerated within fifteen years of his commencement of his current offenses.  (PSR ¶ 62, Resp.)

At sentencing, counsel argued that Movant should not receive three criminal history points for the 1994 conviction because it was too old to use in computing Movant's criminal history points and that the 1997 probationary sentence of six-months was all that should be considered.  (Sentencing Tr. at 15-17.) The District

34

Court specifically questioned whether it was dealing with the 1997 one-year term plus the 1995 six-month term or whether it was dealing with just the six-month term. (*Id*. at 18.)  The probation officer stated that the court was dealing with both sentences, one for the probation violation in 1995 and one for the probation violation in 1997. (*Id*. at 18-19.)  The government stated that the six-month term had occurred within fifteen years of Movant's commission of his current 2010 offenses and that it had no objection to assigning only two criminal history points for the offense.  (*Id*. at 19.) Counsel stated, "No question about that.  At least two points." (*Id*. at 20.)  The Court assigned two points.  (*Id.* at 20, 23); *see also* U.S.S.G. § 4A1.1(b) (allowing two criminal history points for prior sentence of at least sixty days).  Neither counsel nor Movant argued that the 1995 one-year sentence did not belong to Movant. (Sentencing Tr. at 15-20.)

The District Court calculated Movant's criminal history points at eleven, yielding a criminal history category of five, an offense level of 32, and a guideline range of 188 to 235 moths.[11]  (*Id*. at 24.)  In his pre-sentence statement to the Court,

_____

[11]     With two less criminal history points, Movant's criminal history points would have been nine, yielding a criminal history category of four and a guideline range of 168 to 210 months.  U.S.S.G. Ch. 5, Pt. A.

AO 72A
(Rev.8/8
2)

Movant again did not contest the 1995 one-year sentence. (*Id.* at 27-28.) The Court found as follows –

> I don't think the Criminal History Category 5 overstates [Movant's] criminal history. If anything, the criminal history points that are assessed understate [Movant's] criminal history. Pages 15, 16 and 17 [of the PSR] contain approximately ten arrests or conviction[s] for which no criminal history points were imposed at all. In addition, there are aggravating factors that suggest a sentence above . . . the low end of the guideline range . . . .

(*Id.* at 31.)   The Court reviewed the aggravating factors of the number of guns involved, Movant's intent to impede law enforcement, Movant's lack of accepting responsibility, and the seriousness of the offense. (*Id.* at 34.) Under the guidelines range of 188 to 235, the Court stated that it believed a mid-guidelines sentence was proper. (*Id.*) The Court imposed a total 205-month term of imprisonment. (*Id.* at 32.)

Movant now argues that he was sentenced based on inaccurate information in his pre-sentence report, which attributed to Movant his brother's one-year sentence for violating probation. (Mot. to Vacate at 24-25.) Movant's Exhibit J shows that both Movant and his brother were convicted for the 1994 petit larceny, that they both violated their three-year probationary terms, that his brother was re-sentenced in 1995 to a one-year prison term, and that Movant was re-sentenced in 1997 to a six-month prison term. (Mov't Ex. J, ECF No. 230-1.) In presenting this claim as part of

36

Ground VI, it appears that Movant argues that this claim was not properly litigated at sentencing or raised on direct appeal because of ineffective assistance of counsel.

Respondent argues that Movant procedurally defaulted this claim and that he fails to overcome his default because he cannot show prejudice. (Resp't Resp. at 22-25.) Movant replies that trial and appeal counsel were ineffective because the 1995 one-year sentence was his brother's and because the conviction at issue was over ten years old[12] and should not have counted under U.S.S.G § 4A1.2(e). (Mov't Reply at 13-14.)

Section 4A1.2(e), which governs the time period for which prior convictions should be counted in computing criminal history, dictates --

> (1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

> (2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

---

[12]     The Court liberally construes Movant to argue that the 1997 six-month sentence, if counted alone, was over ten years old and, therefore, did not qualify under § 4A1.2(e)(1) or (2).

A six-month sentence generally would receive two criminal history points under § 4A1.1(b).  Here, Movant's 1997 six-month sentence was not imposed within ten years of 2010 and cannot be counted under § 4A1.2(e)(2).  The 1997 six-month sentence cannot be counted under § 4A1.2(e)(1) unless the 1995 one-year sentence also was Movant's, thus causing the sentence to exceed one year and one month and resulting in Movant being incarcerated during any part of the fifteen years before 2010, as found in the PSR.  (PSR ¶ 62, Resp.); *see also* U.S.S.G. § 4A1.2(e)(1), (k)(1). If the 1995 one-year sentence was not Movant's and the Court had counted only the 1997 six-month sentence, Movant would have received two less criminal history points, yielding nine criminal history points, a criminal history category of four, and a guideline range of 168 to 210 months.

Movant fails to show that appellate counsel was ineffective.  Had appellate counsel raised this matter on appeal, the Eleventh Circuit Court of Appeals would have declined review on the ground that it was waived during sentencing. *See United States v. Giraldo*, 287 Fed. Appx. 833, 835 (11th Cir. July 30, 2008) ("Where a defendant raises and then knowingly withdraws an objection to his sentence, we deem the objection waived and will not review it on appeal. . . . Because Giraldo knowingly

38

withdrew his objections, he is bound by the district court's ruling as to his criminal history computation." (citation omitted)).

Movant also fails to show that sentencing counsel was ineffective for failing to object to the 1995 one-year sentence and agreeing to the application of two criminal history points. In Ground VI.(d) and his reply on the matter, Movant does not allege that he made counsel aware of this issue at sentencing. Further, the sentencing transcript does not show that Movant attempted to bring the matter to counsel's or the Court's attention, even when the one-year and six-month sentence were discussed in open court. On this record, the undersigned cannot find that Movant has raised a viable claim that counsel performed deficiently at sentencing.

Further the undersigned recommends that Movant cannot show prejudice. Had Movant received a guideline range of 168-210 months, in light of the Court's statements at sentencing, it appears unlikely that it would have changed the sentencing outcome.

**J.      Ground VII – Court Error in Applying a Manager/Supervisor Upward Adjustment to Movant's Sentencing Offense Level**

At sentencing, the Court found that Movant played a leadership role in criminal activity involving five or more participants, U.S.S.G. § 3B1.1(a).

(Sentencing Tr. at 4-5, 8.)  On direct appeal, Movant contested the application of § 3B1.1.  Appellant Br. at 20, *Horton*, 522 Fed. Appx. 456.  The Eleventh Circuit Court of Appeals found as follows --

> The district court did not clearly err in concluding that the criminal activity at issue involved five or more participants.  [Movant], as the individual responsible for the criminal activity, constitutes one such participant. . . . Three witnesses testified at trial that they purchased firearms at [Movant's] direction and then handed the firearms over to him.  Further, the evidence at trial showed that [Movant's] codefendant purchased firearms in a fashion similar to the way his other accomplices made the straw purchases.  While one codefendant was acquitted, the application notes to the Guidelines provide that, to be counted as a participant in a criminal activity, the individual need not have been convicted. . . . Finally, the evidence at trial showed that another individual, identified as "Black," participated in the straw purchases.  Accordingly, the district court did not clearly err in finding that there were six participants in the criminal activity, and we therefore affirm the application of the § 3B1.1(a) enhancement.

*Horton*, 522 Fed. Appx. at 461.

Movant again argues that the Court erred in finding that he played a leadership role.  (Mot. to Vacate at A.1 and A.2.)  Respondent argues that Movant may not relitigate this issue, which the Eleventh Circuit already has decided.  (Resp't Resp. at 26.)  The Court agrees with Respondent that this matter may not be collaterally re-litigated.  *See Rozier*, 701 F.3d at 684.

40

**K.**   **Movant's Motion to Amend**

Movant seeks to amend and challenge, under *Johnson v. United States*, _ U.S. _,
135 S. Ct. 2551 (2015), his base offense level of twenty under U.S.S.G. § 2K2.1(a)(4).
The background to the issue is as follows.  Movant received a base offense level of
twenty under § 2K2.1(a)(4).  (PSR ¶ 51.)  Movant's prior convictions listed in the PSR
include a 2000 conviction for first degree sexual abuse.  (*Id.* ¶¶ 75.)  Movant's
certificate of conviction (hereinafter "Certificate") for the 2000 conviction shows that
Movant pleaded guilty in New York to sexual abuse in the first degree under
P.L. 130.65-1.  (Certificate, ECF No. 243-1.)  Based on the New York conviction
being considered a crime of violence, Movant's base offense level was calculated as
twenty under U.S.S.G. § 2K2.1(a)(4)(A), which requires a base offense level of twenty
if "the defendant committed any part of the instant offense subsequent to sustaining
one felony conviction of either a crime of violence or a controlled substance
offense[.]"  (Mot. to Amend at 3; PSR ¶ 51.)

Movant's motion to amend asserts that counting his sexual abuse conviction as
a crime of violence was improper because application of the residual clause in
§ 4B1.2(a)(2) violates due process under the reasoning in *Johnson*.  (*Id.* at 3-5.)

41

Movant's motion is dated September 21, 2015, and he contends that it should be deemed timely.  (*Id*. at 1-2.)[13]

Respondent argues that Movant's motion is untimely, that Movant's claim is not cognizable in a post-conviction motion, that Movant procedurally defaulted his claim and cannot show cause and prejudice to excuse his default, and that Movant's conviction for sexual abuse by forcible compulsion qualifies as a crime of violence. (Resp't Reply at 1-8, ECF No. 243.)

In reply, Movant argues that the Certificate does not specify which subsection of § 130.65 was the basis of his conviction; that all three of subsections in § 130.65 do not qualify as violent crimes; and that he cannot be found to have committed a crime of violence under the residual clause.  (Mov't Reply Br. in Support of Mot. to Amend at 3, ECF No. 244).  Movant asserts that "forcible sex offenses" (defined as crimes of violence in the commentary to § 4B1.2) should not be read to include offenses in § 130.65 that are committed without physical force.  (*Id*. at 3-6.)

---

[13]     Respondent's motion to dismiss the motion to amend and Movant's reply thereto are not discussed as they involve an issue that Respondent has since abandoned. (*See* Resp't Mot. to Dismiss, ECF No. 241; Mov't Resp. Br. to Mot. to Dismiss, ECF No. 242; Resp't Reply at 6, ECF No. 243.)

AO 72A
(Rev.8/8
2)

As to timeliness, § 2255(f)(3) allows a claim to be filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Johnson* is retroactively applicable on collateral review. *Welch v. United States*, _ U.S. _, _, 136 S. Ct. 1257, 1268 (2016). Movant's motion to amend, dated September 21, 2015, was filed within one year of the date that *Johnson* was decided on June 26, 2015. As *Johnson* has been made retroactively applicable, the Court shall grant the motion to amend, limited to Movant's *Johnson* claim.

The *Johnson* void for vagueness ruling, however, cannot be used to challenge the advisory sentencing guidelines. In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii) – dictating a mandatory minimum sentence based on a prior conviction for a violent felony, defined as a crime that involves conduct that presents a "serious potential risk of physical injury to another" – is unconstitutionally vague. *Johnson*, _ U.S. at _, _, 135 S. Ct. at 2555, 2557, 2563 (quoting § 924(e)(2)(B)). The Eleventh Circuit Court of Appeals has determined that *Johnson*'s void for vagueness ruling cannot be used to challenge the advisory sentencing guidelines, including § 4B1.2(a)(2), which has

43

a residual clause similar to the clause in § 924(e)(2)(B)(ii). *United States v. Matchett*, 802 F.3d 1185, 1193-96 (11th Cir. 2015); *see also Beckles v. United States*, No. 13-13569, 2015 WL 5692334, at *1 (11th Cir. Sept. 29, 2015) ("*Johnson* says and decided nothing about career-offender enhancements under the Sentencing Guidelines or about the Guidelines commentary underlying Beckles's status as a career-offender."), *cert. granted*, _ U.S. _, 136 S. Ct. 2510 (2016). Movant's amended ground based on *Johnson* fails under *Matchett*.

Further, Movant's amended ground otherwise fails because his sexual abuse conviction is a crime of violence without reference to the guidelines residual clause. Section 2K2.1(a)(4)(A) assigns an offense level of twenty if defendant committed his instant offense subsequent to sustaining a felony conviction for a crime of violence or a controlled substance offense. A crime of violence under U.S.S.G. § 2K2.1 has the same meaning as in U.S.S.G. § 4B1.2(a). U.S.S.G. § 2K2.1, cmt. n.1. Under § 4B1.2(a), a crime of violence means an offense punishable for a term exceeding one year that –

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.

U.S.S.G. § 4B1.2(a) (emphasis added to clause known as the residual clause, to which Movant refers). Notably, without reference to the residual clause, a crime of violence includes offenses that have as an element the use or attempted/threatened use of physical force. *Id*. 4B1.2(a)(1). Further, under the application notes for § 4B1.2, " 'Crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling." U.S.S.G. § 4B1.2, cmt. n.1.

New York Penal Law § 130.65, in effect at the time of Movant's conviction, dictated that –

> A person is guilty of sexual abuse in the first degree when he subjects another person to sexual contact:
>
> > 1. By forcible compulsion; or
> > 2. When the other person is incapable of consent by reason of being physically helpless; or
> > 3. When the other person is less than eleven years old.

N.Y. Penal Law § 130.65 (1997). New York courts use the term § 130.65-1 as a reference to sexual abuse by forcible compulsion. *See Rodriguez v. Hynes*, No. CV-94-2010 (CPS), 1995 WL 116290, at *4 n.5 (E.D.N.Y. Feb. 27, 1995) (using 130.65-1

45

to refer to sexual abuse in the first degree by forcible compulsion and using 130.35-3 to refer to rape in the first degree when victim is less than eleven years old).

Movant was convicted under § 130.65-1, sexual abuse by forcible compulsion, which qualifies as a crime of violence under § 4B1.2(a)(1), without reference to the residual clause.  The forcible compulsion subsection in § 130.65-1 has as an element the use, attempted use, or threatened use of physical force against the person of another and, further, the application notes state that forcible sex offenses qualify as crimes of violence.   As a result, Movant is not entitled to relief on this ground.

## IV.   Certificate of Appealability (COA)

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Melton v. Sec'y, Fla. Dep't of Corr.,* 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting *Slack v. McDaniel,*

AO 72A
(Rev.8/8
2)

529 U.S. 473, 484 (2000)) (internal quotation marks omitted), *cert. denied*, _ U.S. _, 136 S. Ct. 324 (2015).

> When the district court denies a habeas petition on procedural grounds . . . a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Damren v. Florida*, 776 F.3d 816, 820 (11th Cir. 2015) (quoting *Slack*, 529 U.S. at 484), *pet. for cert. filed*, No. 16-6498 (U.S. Oct. 17, 2016).

It is recommended that a COA is unwarranted because the resolution of Movant's grounds for relief, as discussed above, is not reasonably debatable. If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

## V.   <u>Conclusion</u>

For the reasons stated above,

**IT IS ORDERED** that Movant's motion to amend, [Doc. 240], to add a claim under *Johnson* is **GRANTED**.

47

**IT IS RECOMMENDED** that Movant's motion to vacate, set aside, or correct his federal sentence, as amended, [Docs. 230, 240], be **DENIED**; that Respondent's motion to dismiss the amended petition, [Doc. 241], be **DENIED**; and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this 28th day of October, 2016.

**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A (Rev.8/82)